UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

SUMMER A. STEFANOWICH,          )
                                )
    Plaintiff              )
                                )
v.                              )   1:10-cv-00379-JAW
                                )
SOCIAL SECURITY ADMINISTRATION  )
COMMISSIONER,                   )
                                )
    Defendant              )

## REPORT AND RECOMMENDED DECISION

Upon voluntary remand from a prior district court action, the Decision Review Board found that Summer A. Stefanowich retains the functional capacity to perform substantial gainful activity, resulting in a denial of Stefanowich's application for supplemental security income under Title XVI of the Social Security Act. Stefanowich commenced this civil action to obtain judicial review of the final administrative decision. I recommend that the Court affirm the administrative decision.

## The Administrative Findings

The Commissioner's final decision is a July 12, 2010, "corrective" decision made by the Decision Review Board following a prior remand order. (Docs. Related to Administrative Process, Doc. No. 10-2, R. 10-13.[1]) The corrective decision is drawn in reference to the April 22, 2009, decision of Administrative Law Judge John L. Melanson. (Id., R. 20-29.) Judge Melanson's decision tracks the familiar five-step sequential evaluation process for analyzing social security disability claims and the Decision Review Board corrective decision adopts Judge Melanson's statement describing this process. (R. 10.)

---

[1]     The Commissioner has consecutively paginated the entire administrative record ("R."), which has been filed on the Court's electronic docket in a series of attachments to docket entry 10.

At step 1 of the sequential evaluation process, the Judge found that Stefanowich has not engaged in substantial gainful activity since her December 12, 2006, application date. (Finding 1, R. 23.) The Decision Review Board adopted this finding. (R. 10.)

At step 2, the Judge found that Stefanowich has the following severe mental impairments: anxiety disorder and mood disorder. (Finding 3, R. 23.) The Decision Review Board agreed, but found that the evidence also demonstrates the existence of a severe borderline personality disorder. (R. 11.)

At step 3, the Judge found that this combination of impairments would not meet or equal any listing in the Commissioner's Listing of Impairments, Appendix 1 to 20 C.F.R. Part 404, Subpart P. (Finding 3, R. 23.) The Judge assessed, and the Decision Review Board adopted the assessment, that Stefanowich has mild limitations in activities of daily living, moderate difficulties in social functioning, and moderate difficulties maintaining concentration, persistence, and pace. The Board specifically found that the addition of the borderline personality disorder would not upset these assessments. (R. 11.) The Judge also assessed the existence of one episode of decompensation associated with an admission to a psychiatric hospital in September 2008. (R. 24.) The Decision Review Board did not disturb this finding. (R. 11.)

Preliminary to further evaluation at steps 4 and 5, the Judge assessed Stefanowich's residual functional capacity. The Judge found that Stefanowich's combined mental impairments do not impose any exertional restriction, but limit her to unskilled work up to specific vocational preparation level 2, provided that the work is low-stress, with no more than occasional judgment, decision-making, and changes in environment, with only occasional interaction with supervisors and coworkers, and only occasional, incidental contact with the public. (Finding 4, R. 25.) The

Decision Review Board concurred in this assessment. It explained that the evidence it considered on voluntary remand consisted of medical records predating the application date and found that the additional evidence did not provide a basis for changing the Judge's decision concerning the degree of limitation during the period at issue. (R. 11-12.) Thus: "The earlier evidence reflects that the claimant's affective, anxiety, and personality disorders predated her current application but it does not support a finding of functional limitations greater than those identified in the Administrative Law Judge's decision." (R. 11.)

The Decision Review Board indicated that Stefanowich also introduced new evidence consisting of treatment notes and a source statement from Thomas Hallee, M.D. The Decision Review Board found that the treatment notes did not support Dr. Hallee's assessment of marked limitations and that, therefore, they did "not raise a reasonable probability for changing the outcome" and would "not [be] entered into the record pursuant to the closed record regulations found in 20 CFR 405.430." (R. 12.)

At step 4, the Judge found that Stefanowich has no past relevant work to consider. (Finding 5, R. 27.) The Decision Review Board adopted this finding. (R. 12.)

Stefanowich is a "younger individual" born in 1978, has a limited education, can communicate in English, and has no past relevant work or transferrable skill. (Findings 6-8, R. 27-28.) The Judge presented a vocational expert with this vocational profile and the residual functional capacity findings and found, based on the vocational expert's hearing testimony, that Stefanowich could engage in substantial gainful employment, including as a cleaner. (Finding 9, R. 28.) This resulted in a determination at step 5 that Stefanowich was not disabled between her date of application and the date of decision. (Finding 10, R. 28.) The Decision Review Board adopted these findings. (R. 12.)

**Discussion of Plaintiff's Statement of Errors**

Stefanowich argues that the Decision Review Board erred by issuing a corrective decision rather than remanding the case for further administrative development before the administrative law judge, particularly in light of the fact that the Decision Review Board admitted hundreds of pages of medical records describing her treatment between the ages of 17 and 28 and Stefanowich was only 31 years of age at the time of her hearing. (Statement of Errors at 1-3, Doc. No. 12.) Stefanowich further argues that the transcript of the hearing colloquy between the Judge and the testifying medical expert is filled with too many "inaudible" references to serve as a reliable record in support of the decision. (Id. at 3-6.) Additionally, Stefanowich complains that the medical expert who testified at her hearing opined that her personality disorder satisfied listing 12.08. (Id. at 6, citing Hr'g Tr., R. 69-70.) Stefanowich argues that the Judge improperly gave this opinion no weight. (Id.) She further complains that the medical expert should have been able to comment on the medical evidence that the Judge refused to admit and that the Decision Review Board later reviewed. (Id. at 7.) She contends that the record cannot be regarded as fully developed when she has been denied the opportunity to question a medical expert called by the Administration concerning the significance of medical records reviewed by the final administrative decision maker. (Id. at 8, 11.) Stefanowich showcases portions of her earlier treatment records to support her contention that there is material information that could have been discussed with the medical expert and that the denial of an opportunity to advance this evidence in support of her claim was prejudicial. (Id. at 8-14.)

A. *The step 2 and residual functional capacity findings are consistent and are supported by substantial evidence*

At the March 25, 2009, hearing, there was the following dialogue between Stefanowich's representative and the testifying medical expert:

> Q   Just to make sure I understand your testimony, Dr. [Hymoff], you believe that my client's personality disorder meets a listing?
>
> A   I believe it does.
>
> Q   And which listing is that please?
>
> A   12.08 is [INAUDIBLE] affect, pathological independence passivity and aggressivity, intense and unstable in personal relationships with behavior.
>
> Q   And with respect to the B criteria?
>
> A   Well, my testimony today it seems like there is moderate in maintaining social functioning. I would say moderate to marked in activities of daily living. I think by her record relates work-related marked difficulty maintaining employment.

(R. 69-70.) As far as the Judge's decision is concerned, at step 2 the Judge did not expressly include borderline personality disorder as one of Stefanowich's severe mental impairments. Rather, he found that Stefanowich has severe mental impairments consisting of anxiety disorder and mood disorder. (Finding 2, R. 23.) Thereafter, in the context of a residual functional capacity analysis, the Judge explicitly mentioned the personality disorder diagnosis identified by William Paul, Ph.D., following his psychological evaluation of the claimant. (Finding 4, R. 27.) The Judge expressly found "reliable" Dr. Paul's diagnosis, as well as his description of Stefanowich as "cooperative and appropriate, displaying adequate social skills" and his assessment that Stefanowich appeared "capable of work-related activities such as understanding, recall of basic information, persistence, social interaction and adaptation." (Id.) Dr. Paul's evaluation (Ex. 20F) is substantial evidence in support of the residual functional capacity finding and the Judge was not required to adopt Dr. Hymoff's opinion at the hearing that the personality disorder satisfied a listing. The Judge provided an adequate explanation for his rejection of that testimony:

> I am not persuaded by Dr. Ira Hymoff's testimony, as it is conclusory in nature,

> fails to give disabling limitations and is an assessment of the claimant's ability to engage in basic work like activities, which is an opinion reserved to the Commissioner. The objective evidence of record fails to support Dr. Hymoff's testimony that the claimant experienced downturns in symptoms when she was both non-compliant and complaint with medications and counseling. Not only do the records reveal that she is stable with medication, but she also testified at hearing that she noticed an improvement in her symptoms with her current regimen of prescribed medications. Furthermore Dr. Hymoff's opinions were based on the fact that the claimant's reports and allegations were truthful and not exaggerated. As noted above, I do not find her entirely credible. Accordingly, I do not assign Dr. Hymoff's opinion controlling or evidentiary weight.

(R. 27.) The Judge was not compelled to accept the opinion of Dr. Hymoff and could rely, instead, on the opinion of Dr. Paul. The mental residual functional capacity assessment of Peter Allen, Ph.D., supplies further support for the Judge's finding. (Ex. 21F.)

The modified findings made by the Decision Review Board do not rely on insubstantial evidence for the same reason. In effect, the Decision Review Board's modification of the Judge's decision to include personality disorder among the severe mental impairments cured what was otherwise a harmless step 2 oversight because the Judge's residual functional capacity assessment allowed for personality disorder and considered its impact based on the psychological evaluation of Dr. Paul. On the salient issues the Decision Review Board stated:

> However, the Decision Review Board finds that, in addition to the severe anxiety and mood disorders found to be severe by the Administrative Law Judge, the claimant has a severe borderline personality disorder. The evidence shows that psychiatric clinicians have consistently assessed borderline personality disorder. The claimant has reported inappropriate social behavior and anger directed at others when she is among even small groups of people and has a history of difficulties with relationships and keeping jobs (see e.g., Exhibits 20F and 30F). In this regard, the Board agrees with the Administrative Law Judge that the State agency's opinion evidence warrants significant weight. The Board also finds that the evaluation of the Part B criteria and the residual functional capacity assessment that are described in the hearing decision encompass all limitations arising from the claimant's severe mental impairments, including the severe personality disorder. Consistent with the hearing decision, the Board finds that, due to personality disorder, the claimant has moderate difficulties in maintaining social functioning and that she has the residual functional capacity for no more

>than occasional interaction with supervisors and coworkers and no more than
>occasional and incidental interaction with the public.

(R. 11.) Although the testifying medical expert was the only consulting expert who reviewed a collection of mental health treatment records developed subsequent to Dr. Allen's April 2007 assessment, I find no error in the Decision Review Board's finding that these records do not reflect a material change in the character or severity of Stefanowich's mental conditions except for a discrete episode in September 2008 when Stefanowich stopped taking her prescribed medications. (R. 11, citing Exs. 30F, 31F, and 35F.) It is apparent from its decision that the Decision Review Board reviewed the subsequent records and identified entries consistent with its finding, which entries appear to be of a kind that a layperson could reasonably rely upon in support of the stated conclusion.

B.  *There is a substantial evidentiary basis to conclude that the residual functional capacity finding is not undercut by the earlier treatment records*

Stefanowich contends that the entire course of administrative proceedings is unreliable if the medical experts who considered her degree of impairment have not reviewed multiple[2] exhibits associated with her psychiatric treatment between the ages of 22 and 28. Among the earlier records are assessments offered to Maine Disability Determination Services by medical experts who themselves reviewed the medical records in question. For example, Lewis Lester, Ph.D., performed the psychiatric review technique (Ex. 15F) and supplied a mental residual functional capacity assessment (Ex. 16F) on December 12, 2005. His assessment is generally consistent with the assessment of the Decision Review Board in respect to the identification of the diagnoses in question and in respect to the conclusion that work capacity exists despite the preclusion of complex or detailed tasks and restrictions associated with social interaction and

---

[2]  The exhibits in question are exhibits 1F through 19F. Some of these exhibits, including the first two, do not address mental health.

changes in the workplace. (R. 625, 641.) Also among the earlier records is an earlier psychological evaluation by Dr. Paul, offered in 2001 in the context of a Department of Human Services investigation. (Ex. 3F.) Dr. Paul's 2007 psychological evaluation (Ex. 20F), which he offered in relation to the development of Stefanowich's claim for disability benefits, provides a more reliable basis for decision making and, in conjunction with Dr. Allen's mental residual functional capacity assessment[3] and the Decision Review Board's longitudinal review of the record and the Judge's underlying credibility assessment, provides substantial evidence in support of the decision currently under review.

Although it is easy to appreciate Stefanowich's frustration that her representative was not permitted to ask the testifying medical expert to comment on certain entries in her earlier treatment records, Stefanowich has not persuaded me that she was denied a fair hearing or that a different outcome would have obtained had she been permitted to cross-examine Dr. Hymoff concerning the content of any particular record found in exhibits 1F through 19F. Stefanowich received the benefit of Dr. Hymoff's opinion, which was favorable to her, but that opinion was not adopted by the Commissioner based on the existence of other evidence of substantial weight. As for process, the record does not disclose that the Commissioner failed to obtain opinion evidence from consulting experts who were, in fact, familiar with the earlier records,[4] or that the Commissioner deprived Stefanowich of an opportunity to be heard concerning her impairments. Because there exists a substantial evidentiary basis to support the Commissioner's decision and because the denial of Stefanowich's claim does not rely on the testimony of Dr. Hymoff, I conclude that a remand is not called for on the basis of a due process challenge.

---

3   Dr. Allen's notes indicate that he reviewed medical records from as early as 2001 in the course of his review, including Dr. Paul's earlier psychological evaluation, exhibit 3F. (R. 740.)

4   By all appearances, even Dr. Hymoff was familiar with the earlier records (R. 68), though the Judge did not allow for pointed questions concerning the content of these records.

C.   *Dr. Hymoff's opinion is adequately captured in the transcript*

The failure to fully capture every word of Dr. Hymoff's testimony in the transcript does not independently require a remand for further proceedings. The issue is whether the record allows for informed judicial review. Harrison v. Ppg Indus., 446 U.S. 578, 594 (1980). Based on my own review of the record, I am not persuaded that the inaudibility of certain testimony at the hearing frustrates the Court's ability to understand the nature or import of Dr. Hymoff's testimony.

**Conclusion**

For the reasons set forth in the foregoing discussion, I RECOMMEND that the Court AFFIRM the Commissioner's final decision and enter judgment in favor of the Commissioner.

NOTICE

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which *de novo* review by the district court is sought, together with a supporting memorandum, within fourteen (14) days of being served with a copy thereof. A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.

/s/ Margaret J. Kravchuk
U.S. Magistrate Judge

September 14, 2011